80 P.3d 332

Boyd B. WHITE, II, individually,
Plaintiff–Respondent,

v.

BANNOCK COUNTY COMMISSIONERS,
and the Bannock County P & Z Com-
mission, Defendants–Appellants,

and

Castle Concrete, an Idaho Corporation,
Defendant.

Boyd B. White, II, individually, Plaintiff–
Respondent–Cross Appellant,

v.

Bannock County Commissioners, and the
Bannock County P & Z Commission,
Defendants,

and

Castle Concrete, an Idaho Corporation,
Defendant–Appellant–Cross
Respondent.

Nos. 28675, 28699.

Supreme Court of Idaho,
Pocatello, September 2003 Term.

Nov. 12, 2003.

Mark L. Hiedeman, Bannock County Prosecuting Attorney, Pocatello, for appellants Bannock County Commissioners and Bannock County P & Z Commission. Guy R. Price argued.

Jones, Chartered, Pocatello, for appellant Castle Concrete. Jack H. Robison argued.

Boyd B. White II, Pocatello, pro se respondent.

BURDICK, Justice.

This is an appeal from a summary judgment and order voiding the approval of a conditional use permit (CUP), with directions to remand the matter to the County Planning and Development Council (the Council). Because this case reached the district court other than through the statutorily prescribed procedure for an appeal from an adverse decision of the Council, we reverse the district court's decision. We remand the matter to the Council but provide no remedy as the administrative appeal has been dismissed for lack of action, and no appeal was taken therefrom.

## FACTS AND PROCEDURAL BACKGROUND

Monroc, Inc. applied for a conditional use permit in February of 2000, seeking to develop and operate a gravel mine, concrete batch plant, asphalt plant and rock crushing operation on Syphon Road in northwest Bannock County. Boyd B. White, an adjacent landowner, was an outspoken opponent of the proposal that he claimed would devalue his property and would diminish his quality of life and enjoyment of his property.

The Council held a public hearing on Monroc's application on March 15, 2000. White attended and participated in the hearing. At the conclusion of the hearing, the public was informed that only additional written testimony from the public would be accepted by

the Council until March 31, 2000. The Council then conducted two work sessions on the application, which were open to the public, where Monroc provided additional information requested by the Council. At its next regular meeting on April 19, 2000, the Council considered the staff report on the Monroc application. According to the minutes of the meeting, the Council granted the permit with specified conditions.

White filed a notice of appeal to the Bannock County Commissioners on May 8, 2000, pursuant to Zoning Ordinance 1998–1 § 550 (17.56.590).[1] In his notice of appeal, White identified violations of law that he claimed infected the Council's procedures in considering and granting the CUP. He asserted that he was denied due process because procedures before the County Commissioners did not allow for argument or comment from the public. He argued that the grant of the CUP is a contested case under the Administrative Procedures Act (APA), whose procedures were not followed by the Council. He argued that the Council failed to make written findings as of the date he filed his appeal. The Council accepted further testimony from the applicant but refused further comment from the public; allowed the application to be modified without comment from the public; accepted incomplete information from the applicant who bore the burden to show compliance with the conditions of use; and failed to comply with the standards of the Local Land Use and Planning Act (LLUPA). White indicated that he was not requesting a verbatim transcript of the proceedings before the Council.

On May 19, 2000, White filed a complaint in the district court alleging that the Council had neither issued its findings nor specified the conditions applicable to the Monroc permit. Three months after the hearing when the Council granted the CUP, the Council finally issued its written findings, conclusions, and order. White stated in his complaint that an administrative appeal had been filed with the Bannock County Commissioners and that "this appeal to the district court" was being filed for the same reason. White submitted nothing further to the Commissioners and never paid the estimated cost of the transcript in pursuit of the appeal. The Commissioners dismissed the administrative appeal on August 20, 2001, for lack of action.

The prayer for relief in White's complaint requested that the district court declare void not only the grant of the CUP but also a prior, unrelated rezoning of Monroc's property. The complaint sought a sweeping review of council procedures, which White asserted denied due process in their current application and needed to be revised. The complaint further advocated the adoption of new zoning standards, an injunction barring any more hearings regarding Monroc while the standards were being modified, and the appointment of "a properly designated Planning and Development Committee." In the complaint, White also demanded that the County purchase audio microphones for use in future proceedings, to comply with the Americans with Disabilities Act (ADA), and for such other relief as the court deems just and necessary.

White filed an amended complaint with the district court in January 2001. Monroc answered the amended complaint and asserted an affirmative defense seeking dismissal of the complaint. White filed a second amended complaint adding Castle Concrete as a party defendant, while stipulating to the dismissal of Monroc from the action.

On July 3, 2001, White filed a motion for summary judgment regarding the Council's failure to follow state statutes and the state

1. Zoning Ordinance 1998–1 § 550 (17.56.590) reads in part as follows:

A. The board of county commissioners shall serve as the decision-making body for appeals of decisions of the planning and development council. The planning and development council's decision may be appealed to the board of county commissioners by the applicant or any other aggrieved person within ten days after the date on which the decision is made.

B. A transcript of the planning and development council's consideration of the request shall be provided by the county at the expense of the appellant. The board of county commissioners shall determine the fee per page to be charged for transcripts. The appellant shall pay the estimated cost of the transcript to the county in advance, and be refunded additional money or owe additional money when the transcript has been prepared, and the actual cost determined.

and federal constitutions in granting the CUP. Castle Concrete filed a motion for judgment on the pleadings and for summary judgment and a motion to dismiss, alleging that White's appeal did not conform to the procedures set out for appeals from an adverse decision of the Council. The County joined in the motion to dismiss and filed a separate motion asking the district court to strike all of the references to and testimony from the proceedings before the Council. White then filed a motion to augment, seeking to supplement his summary judgment motion with answers to his interrogatories and his affidavit "to show the circumstances in which the material facts are not disputed." In the alternative, White filed a motion requesting that the court order under Rule 84 that all parties listen to the tapes of the meetings, which the County was suggesting were so critical to review.

On October 18, 2001, the district court issued its opinion dismissing plaintiff's appeal because (1) it was not timely, (2) he failed to exhaust administrative remedies, and (3) he failed to request an agency transcript and record. The district court entered its order dismissing the appeal on October 29, 2001.

Following White's motion to reconsider, the district court withdrew its prior opinion. The district court issued a substitute opinion, dated February 19, 2002, addressing in particular White's summary judgment motion with respect to the CUP procedures. For purposes of the appeal, the district court ruled that no transcript of the Council's proceedings would be necessary. Without ruling on the exhaustion question, the district court remanded the matter to the County to correct and amend its procedures. By order dated May 17, 2002, the district court issued an order and addendum to its substitute opinion, granting partial summary judgment to White, voiding the CUP, and remanding the matter to the Council.

On appeal, the County and Castle Concrete dispute that the district court had jurisdiction to proceed on White's complaint, which they argue was filed in an attempt to circumvent the procedure mandated by statute for an appeal from a decision of the Planning and Development Council. They maintain that the district court should have dismissed the complaint and not taken evidence in the form of affidavits to decide White's summary judgment motion, which asserted procedural errors on the part of the Council. White cross-appealed, asserting that he was denied fundamental fairness in the administrative appeal process.

## STANDARD OF REVIEW

▮▮▮ A motion for summary judgment should only be granted when all of the facts contained in the applicable pleadings, depositions, admissions, and affidavits have been construed most favorably to the nonmoving party, and it is clear that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Gardner v. Evans*, 110 Idaho 925, 719 P.2d 1185 (1986). If the evidence reveals no disputed issues of material fact, what remains is a question of law, over which this court exercises free review. *Friel v. Boise City Hous. Auth.*, 126 Idaho 484, 887 P.2d 29 (1994).

## DISCUSSION

▮▮▮ Bannock County Ordinance 17.56.590(A) provides that a decision by the Council "may be appealed to the board of county commissioners by the applicant or any other aggrieved person within ten days after the date on which the decision is made." Although the Council announced its approval of Monroc's CUP at its regular meeting on April 19, 2000, it only issued its findings and conclusions on July 27, 2000. Under LLU-PA,

The approval or denial of any application provided for in this chapter shall be in writing and accompanied by a reasoned statement that explains the criteria and standards considered relevant, states the relevant contested facts relied upon, and explains the rationale for the decision based on the applicable provisions of the comprehensive plan, relevant ordinance and statutory provisions, pertinent constitutional principles and factual information contained in the record.

I.C. § 67–6535(b). Therefore, the date "on which the decision is made" corresponds to the date of the written findings, conclusions and order, which tolls the time for filing an appeal.

White's notice of appeal to the commissioners was filed on May 8, 2000, in anticipation of the Council's written decision. We need not discuss, however, whether the premature notice was later rendered valid because on May 18, 2000, White initiated suit in the district court to assert due process violations from the alleged irregularities and illegal procedures employed by the Council in granting the CUP approval. It is the action of the district court awarding summary judgment to White, vacating the CUP approval and remanding to the County that we review, pursuant to the County's timely notice of appeal therefrom.

## I.

■ The primary issue raised by this appeal is whether the district court had authority to act on White's complaint. The original and amended complaints in the district court action recite: "Both this appeal and the administrative appeal were required to be filed to preserve rights to judicial review." The plaintiff therefore styled the complaint as an appeal, seeking not only review of the Council's procedures in granting the CUP but also invalidation of the CUP. In answering the complaint, Monroc and later, Castle Concrete, asserted a defense of failure to exhaust administrative remedies and lack of jurisdiction.

This Court has recognized that the doctrine of exhaustion of administrative remedies can be raised as a defense to a court action in certain situations; however, we have not treated the doctrine as one depriving a court of jurisdiction over the subject matter. *Sierra Life Ins. Co. v. Granata*, 99 Idaho 624, 628, 586 P.2d 1068, 1072 (1978). The Court distinguished the doctrine of exhaustion, which governs the timing of judicial review of administrative action, from the doctrine of primary jurisdiction, which determines whether the court or agency should make the initial determination. *Id. quoting* 3 K. Davis, Administrative Law Treatise, 1–3

§ 19.01 (1958). *Cf. Chisholm v. Twin Falls*, 139 Idaho 131, 75 P.3d 185 (2003) (upholding on jurisdictional grounds the dismissal of a petition for judicial review of a permit granted without notice and a public hearing, where neither LLUPA nor the County Zoning Ordinance required notice and a hearing).

■ With the enactment of LLUPA in 1975, the legislature intended to give local governing boards broad powers in the area of planning and zoning. *Worley Hwy. Dist. v. Kootenai County*, 104 Idaho 833, 663 P.2d 1135 (Ct.App.1983). Original jurisdiction to decide such issues does not rest in the district court. *Jerome County ex rel. Board of Comm'rs v. Holloway*, 118 Idaho 681, 799 P.2d 969 (1990). Whether or not Monroc's request for a conditional use permit met the requirements of the statute or satisfied due process is an issue which should have been pursued before the county zoning authorities under the procedures of the ordinance and LLUPA, I.C. § 67–6501 *et seq.*, and not by the district court through a collateral attack. *See id.* at 685, 799 P.2d at 973. "If a court allows a suit to be maintained prior to such final determination, it interferes with the subject matter jurisdiction of another tribunal." *Pounds v. Denison*, 115 Idaho 381, 383, 766 P.2d 1262, 1264 (Ct.App.1988), *citing County of Contra Costa v. State of California*, 177 Cal.App.3d 62, 222 Cal.Rptr. 750 (1986).

Idaho Code §§ 67–6519(c) and 67–6521(d) of the Local Land Use Planning Act (LLUPA) both provide that a person "aggrieved by a decision may within twenty-eight days after all remedies have been exhausted under local ordinances seek judicial review under the procedures provided by chapter 52, title 67, Idaho Code [IDAPA]." The exhaustion requirement is also found in I.C. § 67–5271 of the IDAPA: "A person is not entitled to judicial review of an agency action until that person has exhausted all administrative remedies required in this chapter."

Bannock County Ordinance 17.56.590 describes the process for appeals of a planning and development council's decisions:

A. The board of county commissioners shall serve as the decision-making body for

appeals of decisions of the planning and development council. The planning and development council's decision may be appealed to the board of county commissioners by the applicant or any other aggrieved person within ten days after the date on which the decision is made. Notice of the appeal shall be filed with the planning director.

B. A transcript of the planning and development council's consideration of the request *shall* be provided by the county at the expense of the appellant .... (emphasis added)

C. Not more than (30) days from the preparation of transcripts, the board of county commissioners shall consider the appeal.... The board of county commissioners shall consider such findings, reports, minutes, comments and recommendations as are forwarded to them by the planning and development council.

Assuming, but not deciding, that White's notice of appeal from the Council's grant of the CUP to Monroc was filed in accordance with the ordinance, we note that White objected to and failed to pay for the required transcript and record, thus halting the administrative appeal, which was eventually dismissed by the County Commissioners for lack of action. White failed to seek administrative review of the Council's approval of the CUP and to obtain a final judgment of the county commissioners. White did not exhaust his administrative remedies, and thus had no recourse to review by the district court.

■■■ The doctrine of exhaustion requires that where an administrative remedy is provided by statute, relief must first be sought by exhausting such remedies before the courts will act. *McKart v. United States,* 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969); *Pounds v. Denison,* 115 Idaho 381, 766 P.2d 1262 (Ct.App.1988). No one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted. *Myers v. Bethlehem Shipbuilding Corp.,* 303 U.S. 41, 50–51, 58 S.Ct. 459, 463–64, 82 L.Ed. 638, 643–44 (1938), *cited in Dickerson v. Crutcher,* 101 Idaho 377, 379, 613 P.2d 934, 936 (1980).

Furthermore, the doctrine of exhaustion generally requires that the case run the full gamut of administrative proceedings before an application for judicial relief may be considered. *Palmer v. Board of County Comm'rs of Blaine County,* 117 Idaho 562, 565, 790 P.2d 343, 346 (1990), *citing Grever v. Idaho Telephone Co.,* 94 Idaho 900, 903, 499 P.2d 1256, 1259 (1972). If a claimant fails to exhaust administrative remedies, dismissal of the claim is warranted. *Bryant v. City of Blackfoot,* 137 Idaho 307, 48 P.3d 636 (2002); *Palmer v. Board of County Comm'rs of Blaine County, supra; Dickerson v. Crutcher, supra.*

Although improperly relied upon by the district court to support its decision to consider White's appeal and remand the matter to Bannock County, *Bone v. City of Lewiston,* 107 Idaho 844, 693 P.2d 1046 (1984) is nevertheless relevant to this case. The *Bone* Court concluded that Bone had improperly bypassed the exclusive source of appeal for adverse zoning decisions by seeking a declaratory judgment and a writ of mandamus. *Id.* As in *Bone,* White attempted to appeal the Council's decision on the CUP other than through the statutory administrative procedures. *See also V–1 Oil Co. v. County of Bannock,* 97 Idaho 807, 810, 554 P.2d 1304, 1307 (1976) (affirming dismissal of action for declaratory relief that is not intended as a substitute for a statutory procedure and requiring exhaustion of such administrative remedies).

Whether because of frustration over the Council's nearly three-month delay in issuing its written findings and conclusions or a sense of urgency in trying to stop Monroc's use of its property for an asphalt plant and rock crushing operation, White failed to follow the proper procedure for exhausting the available administrative remedies before bringing an action in the district court. As we have previously recognized, important policy considerations underlie the requirement for exhausting administrative remedies, such as providing the opportunity for mitigating or curing errors without judicial intervention, deferring to the administrative processes established by the Legislature and the administrative body, and the sense of comity

for the quasi-judicial functions of the administrative body. *See Pounds v. Denison, supra,* 115 Idaho at 384, 766 P.2d at 1265 (holding failure to appeal disposition of Pounds' grievance barred consideration in a judicial forum of any claims related to her discharge, on exhaustion grounds). *See also McKart v. United States, supra* at 193–195, 89 S.Ct. at 1662–63, 23 L.Ed.2d at 202–04 *citing Grever v. Idaho Telephone Co.,* 94 Idaho 900, 499 P.2d 1256 (1972)(compiling a list of important functions served by the exhaustion doctrine).

 It is clear that White had an adequate administrative remedy since the Board of County Commissioners is designated as "the decision-making body for appeals of decisions of the planning and development council," with authority to overturn the Council's decision. Bannock County Ordinance 17.56.590(A). The procedures also provide for the preparation of a full record, such that appellate review of the record will provide the commissioners the additional opportunity to correct efficiently and promptly any prior errors of the Council. Upon re-examination by the district court, "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts,* 411 U.S. 138, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973).

 We conclude that the district court should have applied the doctrine of exhaustion to dismiss White's complaint. We also conclude that the recognized exceptions to the exhaustion doctrine do not apply to the present case where the question of a conditional use permit "is one within the zoning authority's specialization and when the administrative remedy is as likely as the judicial remedy to provide the wanted relief." *See generally Fairway Development Co. v. Bannock County,* 119 Idaho 121, 124, 804 P.2d 294, 297 (1990). As a matter of law, therefore, White was not entitled to judgment on his claim seeking to invalidate the procedures employed by the Council and to void the conditional use permit. We therefore reverse the district court's decision.

## II.

Castle Concrete requests an award of attorney fees. The Court is not left with an abiding belief that the appeal was brought, pursued or defended frivolously, unreasonably or without foundation.

## CONCLUSION

We reverse the decision of the district court granting White's summary judgment and remand the case to the County, without a remedy.

We do not award attorney fees but do award costs to appellants.

Chief Justice TROUT, and Justices SCHROEDER, KIDWELL and EISMANN concur.